**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | <u>**INDICTMENT**</u> |
| | CRIMINAL NO. 20-339 (PAD) |
| v. | CRIMINAL VIOLATION: |
| **GABRIEL F. HERNANDEZ**, | 18 U.S.C. § 1343 |
| **Defendant.** | **(Wire Fraud)** Counts 1-10 |

<u>**INDICTMENT**</u>

**THE GRAND JURY CHARGES:**

At all times material to this Indictment:

**GENERAL ALLEGATIONS**

1.      Gabriel F. Hernandez ("Hernandez"), a certified public accountant, was a resident of San Juan, Puerto Rico, in the District of Puerto Rico.  Hernandez served as Tax Manager and Partner-in-Charge of the Tax Division of a large public accounting, tax, consulting and business advisory firm.

2.      Corporation A was a Puerto Rico limited liability company formed by Hernandez on December 28, 2018, to conduct all lawful business permitted under the laws of the Commonwealth of Puerto Rico.  An Internal Revenue Service special agent posing as a wealthy United States taxpayer from Arizona ("UCA-taxpayer") was listed as Corporation A's owner and registered agent.

3.      Act 20, also known as the Export Services Act, offered tax incentives for Puerto Rican companies to export services to other jurisdictions.  The tax benefits on income derived from customers outside Puerto Rico in relation to services rendered from Puerto Rico included a fixed income tax rate of 4% for eligible export services, a 100% tax-exemption on dividends

- 1 -

from earnings and profits, and a 60% tax-exemption on local municipal taxes, all with a 20-year decree guaranteeing these rates.

4.      Act 22, also known as the Individual Investors Act, offered tax incentives to individuals who relocated to Puerto Rico.  The tax benefits for a *bona fide* Puerto Rican resident included a total exemption from local income taxes on all passive income, and a 100% exemption on dividends, interest on capital gains, all with a 20-year decree guaranteeing these rates.  In order to qualify for Act 22, there are several requirements for an individual to meet, including that they are present in Puerto Rico for at least 183 days during the year and have no significant connection to the U.S. mainland.

5.      In order to obtain a tax exemption decree pursuant to Act 20 and Act 22, a service provider was required to submit an application with the Government of Puerto Rico, Department of Economic Development, Office of Industrial Tax Exemption.  If approved, the decree provided the full details of the tax rates and conditions mandated by Act 20 and Act 22 and was considered a contract between the service provider and Government of Puerto Rico.

6.      The Act 20 decree issued to Corporation A on December 20, 2019, granted a tax exemption covering the performance of the following eligible service activities for markets outside Puerto Rico: "Consulting Services" and "Investment Banking and Other Financial Services."

7.      Under United States law, a *bona fide* resident of Puerto Rico was not subject to federal income taxes derived from sources within Puerto Rico, he or she was only subject to those taxes derived from external sources.

8.      The Puerto Rico Treasury Department (Departamento de Hacienda) ("Hacienda") was responsible for the Treasury of the U.S. Commonwealth of Puerto Rico.

Hacienda's duties included the collection of taxes, serving as the central disbursement agency of the government and promoting fiscal stability for the social and economic well-being of Puerto Rico.

9.      The Internal Revenue Service ("IRS") was an agency of the United States Department of the Treasury responsible for enforcing and administering the federal tax laws of the United States, and collecting taxes owed to the United States.

**COUNTS ONE THROUGH TEN**
**18 U.S.C. § 1343**
**(Wire Fraud)**

10.     Paragraphs 1 through 9 of the General Allegations of this Indictment are hereby realleged and incorporated by reference.

11.     From at least in or around May 2018 and continuing through and including the date of this Indictment, in the District of Puerto Rico, and elsewhere,

**GABRIEL F. HERNANDEZ,**

the defendant herein, and others known and unknown to the Grand Jury, devised and intended to devise a scheme and artifice to defraud the Internal Revenue Service of the United States Department of the Treasury and to retain and obtain money by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing the scheme and artifice, and attempting to do so, did knowingly transmit and cause to be transmitted in interstate commerce, by means of wire communications, certain signs and signals, more specifically set forth in the Counts below.

**Object of the Scheme**

12. The object of the scheme and artifice to defraud, was for defendant **GABRIEL F. HERNANDEZ** to unjustly enrich himself and others by receiving fees in exchange for false

and fraudulent acts including, but not limited to, preparing and filing and causing to be prepared and filed a fraudulent tax-exemption decree application with the Office of Industrial Development, preparing and filing and causing to be prepared and filed a false Form 480.30(II)DI, "Income Tax Return For Exempt Businesses under the Puerto Rico Incentives Programs Industrial Development," ("Form 480.30(II)DI"), with Hacienda, as well as a false Business Volume Declaration with the Municipality of San Juan and advised the preparation and filing of a false federal income tax return with the IRS.

<u>**Manner and Means of the Scheme**</u>

13.     The manner and means by which the defendant sought to accomplish the scheme included, among other things, the following:

    a.     It was part of the scheme that the defendant and others would and did defraud the IRS and unlawfully evade the assessment and payment of taxes of the UCA-taxpayer by engaging in financial transactions devoid of any economic substance (sham transactions) in order to create the illusion of a consulting business earning income from services performed within Puerto Rico, rather than within the mainland United States.

    b.     It was further part of the scheme that the defendant would and did collect substantial fees for his services.

    c.     It was further part of the scheme that the defendant and others would and did prepare and file and cause the preparation and filing of a fraudulent Act 20 application with the Office of Industrial Tax Exemption of Puerto Rico.

    d.     It was further part of the scheme that the defendant and others would and did prepare and file and cause the preparation and filing of a false Form 480.30(II)DI with Hacienda.

- 4 -

e.      It was further part of the scheme that the defendant and others would and did prepare and file and cause the preparation and filing of a false 2020-21 Business Volume Declaration with the Municipality of San Juan.

f.      It was further part of the scheme that the defendant and others would and did communicate by e-mail and telephone in interstate and foreign commerce.

g.      It was further part of the scheme that the defendant and others would and did misrepresent, conceal, hide, and cause to be misrepresented, concealed, and hidden, acts done in furtherance of the scheme and artifice to defraud and the purpose of those acts.

## The Wire Communications

14.    On or about the dates listed below, the defendant, **GABRIEL F. HERNANDEZ,** for the purpose of executing the scheme and artifice to defraud described above and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce writings, signs, signals, pictures and sounds for the purpose of executing such scheme and did aid, abet, counsel, command, induce, procure and willfully cause the transmission of the following wire communications in interstate commerce, each transmission constituting a separate count:

| COUNT | DATE | WIRE COMMUNICATION |
|---|---|---|
| 1 | 05/31/18 | Telephone call in interstate commerce between Hernandez in Puerto Rico and UCA-taxpayer in Arizona wherein Hernandez explained that he would create a business within Puerto Rico to move the UCA-taxpayer's profits from the mainland United States to Puerto Rico. |
| 2 | 08/24/18 | Telephone call in interstate commerce between Hernandez in Puerto Rico and UCA-taxpayer in Arizona wherein Hernandez proposed to create a company in Puerto Rico that would need to show some level of business activity proportional to the amount of income to be transferred from the United States. |
| 3 | 12/28/2018 | Email in interstate commerce from A.S. in Puerto Rico to UCA-taxpayer in Arizona with attached copies of the certificate of formation, certificate of organization, and payment receipt issued by the Department of State of the Government of Puerto Rico for Corporation A. |
| 4 | 12/13/19 | Email in interstate commerce from Hernandez in Puerto Rico to the UCA-taxpayer in Arizona requesting that he provide the profit and loss statement for Corporation A. |
| 5 | 12/22/19 | Email in interstate commerce from Hernandez in Puerto Rico to the UCA-taxpayer in Arizona stating that for tax year 2019 the UCA-taxpayer would report $500,000 in business income earned in Puerto Rico, but Hernandez did not explain how he calculated the number. |
| 6 | 02/24/20 | Email in interstate commerce from M.O. in Puerto Rico to the UCA-taxpayer in Arizona with an attached copy of the Act 20 Grant of Tax Exemption decree issued to Corporation A by the Office of Industrial Tax Exemption. |
| 7 | 07/01/20 | Email in interstate commerce from F.R. in Puerto Rico to the UCA-taxpayer in Arizona with attached draft copies of the false 2019 Form 480.30(II)DI and 2020-21 Business Volume Declaration for review. |
| 8 | 07/07/20 | Telephone call in interstate commerce between Hernandez in Puerto Rico and UCA-taxpayer in Arizona wherein Hernandez instructed the UCA-taxpayer to tell his accountant to exclude the $500,000 on his Federal income tax return. |
| 9 | 07/08/20 | Email in interstate commerce from F.R. in Puerto Rico to the UCA-taxpayer in Arizona with an attached authorization letter to sign the 2019 Form 480.30(II)DI on the UCA-taxpayer's behalf and make the payment of the taxes using the UCA-taxpayer's credit card on file. |

| COUNT | DATE | WIRE COMMUNICATION |
|-------|------|--------------------|
| **10** | 07/23/20 | Email in interstate commerce from F.R. in Puerto Rico to the UCA-taxpayer in Arizona with an attached copy of the false 2019 Form 480.30(II)DI filed with Hacienda.  The return was date-stamped on July 14, 2020, and falsely claimed $500,000 was earned in Puerto Rico, and signed by Hernandez under the penalties of perjury that the return was true, correct and complete. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

A TRUE BILL

FOREPERSON

DATE: _14-Oct 2020_

W. STEPHEN MULDROW
UNITED STATES ATTORNEY

SETH A. ERBE
Assistant United States Attorney

FRANCESCA L. BARTOLOMEY
Special Attorney
U.S. Department of Justice

GREGORY E. TORTELLA
Special Attorney
U.S. Department of Justice